## In re Anonymous No. 108 D.B. 89

Disciplinary Board Docket no. 108 D.B. 89.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

TUMOLO, *Chairman,* April 19, 1990 — Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to this honorable court with regard to the above-captioned petition for discipline.

## PROCEDURAL HISTORY

Respondent is 39 years old and was admitted to the practice of law on November 2, 1977.

On July 5, 1988, the United States Attorney filed a criminal information with the U.S. District Court for the [  ] District of Pennsylvania charging respondent with three counts of failure to file timely federal income tax returns in violation of 26 U.S.C. §7203 as a result of respondent's failure to timely file returns for the years 1982, 1983, and 1984.

On January 5, 1989, the U.S. Magistrate, sitting without a jury, found respondent guilty on all three counts.

On February 10, 1989, the magistrate sentenced respondent to pay the costs of prosecution, a fine of $1,000, and placed respondent on probation for three concurrent periods of two years.

On May 18, 1989, the Honorable [A], Chief Judge of the U.S. District Court for the [  ] District of Pennsylvania, suspended respondent from practice before the [  ] District Court pursuant to local rules 301.1 and 301.2.

On June 18, 1989, the Supreme Court of Pennsylvania entered a rule, pursuant to rule 214(d)(1), Pa.R.D.E., directing respondent to show cause why he should not be placed on temporary suspension as a result of his criminal conviction.

By order dated October 11, 1989, the Supreme Court of Pennsylvania temporarily suspended respondent from the practice of law in the Commonwealth of Pennsylvania and directed that respondent's conviction be referred to the Disciplinary Board pursuant to rule 214(f), Pa.R.D.E.

On November 15, 1989, the petition for discipline was referred for hearing to Hearing Committee [  ], consisting of [  ].

On February 22, 1990, the panel conducted its hearing.

On March 22, 1990, the committee filed its report in which it accepted the recommendation of the Office of Disciplinary Counsel for a three-month suspension retroactive to the date when the temporary suspension issued by the Supreme Court of Pennsylvania became effective.

Neither the Office of Disciplinary Counsel nor respondent filed any exceptions.

The matter came before the board on April 5, 1990.

## FINDINGS OF FACT

There being no exceptions filed by either party, and based on the board's independent review of the entire record, the board adopts those as the findings of fact in the case as follows:

(1) Respondent, [ ], is an attorney admitted to practice law in the Commonwealth of Pennsylvania, having been admitted on November 2, 1977, Attorney Registration no. [ ], who resides at [ ].

(2) At the time of the instant charges, respondent was working as the county tax claim solicitor for [ ] County and as a certified public accountant performing some tax work and estate planning for clients. In addition, he had a small general legal practice. At the same time, he was serving without pay as the president of [B] Inc., a non-profit corporation which was formed to obtain a minor league baseball club for the [ ] area.

(3) Since his suspension from the practice of law, respondent has continued to work as a CPA and as a paralegal for an attorney, [C], whose office is located in [ ], Pa.

(4) Respondent's current registered office address for the practice of law is [ ].

(5) On or about July 5, 1988, the U.S. Attorney, [ ] District, filed a criminal information with the U.S. District Court for the [ ] District of Pennsylvania, indexed to no. CR [ ], charging respondent with three counts of failure to file a timely federal income tax return, in violation of 26 U.S.C. §7203, as a result of respondent's failure to file federal income tax returns for the years 1982, 1983 and 1984.

(6) On or about July 22, 1988, respondent pleaded not guilty to the criminal charges, but waived his right to a jury trial and consented to be tried before a magistrate.

(7) Respondent was tried before the Honorable [D], U.S. Magistrate, from December 13, 1988 to December 16, 1988.

(8) By memorandum dated January 4, 1989, and filed on January 5, 1989, the magistrate found respondent guilty beyond a reasonable doubt of all three counts in the information.

(9) On or about February 10, 1989, respondent was sentenced to pay the cost of prosecution and a fine of $1,000 without imprisonment; further, respondent was placed on probation for three concurrent periods of two years. Respondent was also ordered to pay a special assessment in the amount of $25 pursuant to 18 U.S.C. §3011 on count III.

(10) By order dated May 18, 1989, the Honorable [A], Chief Judge of the U.S. Court for the [ ] District of Pennsylvania, suspended respondent from practice before the [ ] District Court pursuant to the requirements of local rules 301.1 and 301.2.

(11) By order dated June 18, 1989, the Supreme Court of Pennsylvania entered a rule pursuant to rule 214(d)(1) of the Pennsylvania Rules of Disciplinary Enforcement directing respondent to show

 

cause why he should not be placed on temporary suspension as a result of his criminal conviction.

(12) On or about October 11, 1989, the Supreme Court of Pennsylvania temporarily suspended respondent and referred this matter to the Disciplinary Board.

(13) In addition to the criminal liabilities, it was determined that the tax deficiencies· were due and owing in the following amounts: $4,633 for calendar year 1982 based upon a gross income of $43,272; $9,989 for calendar year 1983 based upon a gross income of $63,682; and $5,945 for calendar year 1984 based upon a gross income of $48,850. The total amounted to $20,567.

(14) Since his conviction, respondent has placed the sum of $40,000 into a special escrow account with the IRS so that the IRS can determine the final liability due and owing for those tax years. It is anticipated that this sum shall be more than sufficient to pay all past tax deficiencies.

(15) Since 1984, respondent has filed timely federal, state and local tax returns. He is presently deficient in his Pennsylvania income tax, but is working out a payment plan with the Department of Revenue.

(16) Respondent became interested in obtaining a minor league baseball club for the [ ] area in the late 1970s.

(17) Respondent, at his personal great expense, and for no remuneration whatsoever, worked for 10 years to bring minor league baseball back to the [ ] area, which effort succeeded in the purchase by a local authority of the [E] which were then moved to the [ ] area and renamed the [F].

(18) The club is affiliated with the [G] Baseball Club, [ ] level.

(19) Respondent testified that during the 10 years, he raised funds for a feasibility study, hired architects to design a stadium, obtained financing from a variety of sources for the construction of the stadium, the purchase of the baseball club, and prosecuted a lawsuit up to the U.S. Supreme Court when the prior owner refused to perform under a contract for the sale of the [E].

(20) Numerous witnesses attested to respondent's character, describing his selflessness, altruistic spirit, civic devotion, and general integrity. The panel found these witnesses to be credible.

(21) Respondent himself testified to the effect which his quest has had on his personal life, causing his marriage to end in divorce.

(23) Respondent further testified to the fact that he did not realize that the failure to file an income tax return was a crime under the federal statute.

(24) Respondent testified that while he was working with a local CPA firm in the [   ] area, it was not uncommon that returns were not filed on a timely basis.

(25) Respondent testified that because of his intense involvement — almost to the point of obsession — with obtaining a baseball club, he put everything else in his life aside, including filing his tax returns.

(26) Respondent's efforts are well documented, and the opinion of the U.S. Circuit Court of Appeals, [  ] Circuit, is set forth in respondent's exhibit 2.

(27) Since his conviction, respondent has cooperated fully with the government in making restitution.

(28) Respondent never intended to evade his tax liability.

(29) The attorney who represented respondent in his criminal proceeding, [H], Esq., testified that he

believes the probation period will be reduced because of the extensive cooperation by respondent.

(30) [H] testified that despite the criminal conviction, [respondent] is a credit to both the profession and his community.

(31) Other witnesses testified to the fact that respondent is still regarded as a local hero rather than as a convicted criminal.

(32) Since his suspension, respondent has complied with all of the requirements of the suspension, including notification of his then-existing clients.

(33) Since his suspension, respondent has continued to maintain his contact with the law by working as a paralegal for attorney [C] and the panel finds him fit to practice law.

## CONCLUSIONS OF LAW

The board concurs with the finding of the hearing committee that the evidence does not support a violation D.R. 1-102(A)(4) — conduct involving dishonesty, fraud, deceit, or misrepresentation; nor does the evidence support a violation of D.R. 1-102(A)(5) — conduct prejudicial to the administration of justice.

Likewise, the board concurs in the finding of the Hearing Committee that the evidence does support a violation of D.R. 1-102(A)(6) — conduct which adversely reflects on respondent's fitness to practice law.

## DISCUSSION

Respondent did not file timely federal income tax returns for the years 1982, 1983, and 1984. In each of those years, he had obtained extensions for purposes of filing, but had gone well beyond the allotted

time, having filed all three returns on May 29, 1986, after he had been contacted by agents of the IRS.

Respondent was found guilty beyond a reasonable doubt of having willfully failed to file the three federal income tax returns. While an element of the offense is clearly intentional conduct, it does not involve, nor does the federal criminal prosecution show any evidence of fraud, dishonesty, deceit, or misrepresentation. *In re Anonymous No. 20 D.B. 77,* 14 D.&C. 3d 123 (1978). Further, the record shows that respondent cooperated with the government, escrowing $40,000 with the IRS until a final determination of taxes, penalties and interest could be made. There is no conduct adverse to the administration of justice. *In re Anonymous No. 19 D.B. 79,* 14 D.&C. 3d 799 (1980).

Certainly, however, the intentional failure to timely file tax returns does adversely reflect on respondent's fitness to practice law. In this case, respondent is an attorney, a certified public accountant, and has taught tax law at the University of [   ]. All three of these capacities mandate that he either knew or should have known of the necessity of filing timely tax returns. His license to practice law mandates that respondent do what the law requires. *In re Anonymous No. 18 D.B. 78,* 14 D.&C. 3d 759 (1980).

In mitigation, respondent was able to clearly establish that he is a substantial contributor to the community within which he lives. He engaged in an untiring and uncompensated effort over a period of more than 10 years to bring [   ] baseball to the [   ] community. Encompassed in that effort was his planning and seeing to the development of a new stadium. The economic and general community improvements as a result of his efforts are to be congratulated. The hearing committee put it well in its recommendation to the board by stating:

"The respondent now comes before us a fallen hero, a figure from a Greek tragedy. That he is regarded as a home-town hero for returning baseball is his triumph; that we, this panel, must now pass on him for violations of the Code of Professional Responsibility is his tragedy."

What discipline is appropriate given these facts?

That respondent's return to the practice of law will not adversely prejudice the bar or the public's perception thereof is beyond question based on the record before us. The testimony and written recommendations from outstanding members of the bar in the [   ] community attest to respondent's excellent reputation as a legal practitioner and as a contributing member of that community. While respondent's actions are not condoned, he is admired and respected, and aside from this transgression has a blemish-free disciplinary history.

And finally, there is nothing to suggest on this record, in light of respondent's short suspension, that he does not remain fully competent to practice law.

## RECOMMENDATION

The board unanimously recommends to the Supreme Court of Pennsylvania that respondent, [   ], be suspended from the practice of law for a period of three months, retroactive to the date of his temporary suspension by the court. It is further recommended that respondent be ordered to pay the costs of prosecution in this matter.

Mr. Brown and Ms. Heh did not participate in the adjudication.

## ORDER

And now, June 28, 1990, upon consideration of the report and recommendation of the Disciplinary

Board dated April 17, 1990, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of two years retroactive to February 10, 1989, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to rule 208(g), Pa.R.D.E.